J-A20036-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| DAVID NOWAKOWSKI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| E.E. AUSTIN AND SON, INC., | : | |
| AMTHOR STEEL CO., CARRARA | : | |
| STEEL ERECTORS, INC., CH2M HILL | : | |
| ENGINEERS, INC.,GENERAL | : | |
| ELECTRIC CO., UPMC, KNOX, | : | |
| MCLAUGHLIN, GORNALL, AND | : | |
| SENNETT, P.C. | : | No. 1854 WDA 2017 |

Appeal from the Order December 7, 2017
in the Court of Common Pleas of Erie County,
Civil Division at No(s):  No. 11888-17

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:          FILED NOVEMBER 20, 2018

David Nowakowski ("Nowakowski"), pro se, appeals from the Order dismissing his Petition for Injunctive Relief, with prejudice, sustaining the Preliminary Objections filed by E.E. Austin and Son, Inc. ("E.E. Austin"), Amthor Steel Company ("Amthor"), Carrara Steel Erectors, Inc. ("Carrara Steel"), CH2M Hill Engineers, Inc. ("CH2M"), General Electric Company ("GE"), UPMC, and Knox, McLaughlin, Gornall and Sennett, P.C. ("Knox") (collectively, "Defendants"), and dismissing Nowakowski's Complaint, with prejudice.  We affirm.

Nowakowski filed a Complaint on July 5, 2017, raising claims of sexual harassment, intentional infliction of emotional distress, negligent infliction of emotional distress, intrusion upon seclusion, civil conspiracy, negligence, and

wrongful discharge. Nowakowski also requested punitive damages in the amount of $3,000,000 from each defendant, as well as compensatory damages from E.E. Austin, CH2M, and Amthor. According to Nowakowski, he filed the Complaint following the dismissal of a sexual discrimination claim he had filed with the Pennsylvania Human Relations Commission during his employment with E.E. Austin.

In his Complaint, Nowakowski, an engineer, stated that he had previously been employed by defendants Amthor, CH2M (in a subcontracted position at GE), and E.E. Austin. Nowakowski essentially argued that the Carrara family (the owners of Amthor) "is a mob family, which uses psychological games to intimidate, unnerve and ultimately control targeted individuals[,]" and claimed that he has been the subject of stalking, harassment and intimidation since "[p]robably [] the summer of 1995."[1] In his expansive Complaint, Nowakowski offers a multitude of suspicions and allegations, naming various combinations of individual Defendants as the responsible parties for each incident. As it is otherwise difficult to discern the relevant facts of this case from the record, we highlight the allegations identifying a connection among several Defendants.

_____

[1] In the Conclusion of his Complaint, Nowakowski recalls playing in a soccer tournament in Buffalo, New York, when he was about 11 or 12 years old, during which a player on the opposing team "attempt[ed] to drag [Nowakowski] to the ground with a leg tackle." Complaint, 7/5/17, at 53 (unnumbered). Nowakowski also stated that his team's goalie suffered a broken leg during the same game, and claims that "an organized crime family in Erie[] hired an organized crime family in Buffalo to train a child to break the legs of other children...." Id.

Only one allegation links three of Nowakowski's employers (GE, Amthor, and E.E. Austin):

> 19. Let[']s talk about horses.  For a number of reasons, the concept of a draught animal is an interesting and telling metaphorical tool.  A horse can be broken, trained, and slaughtered.  While working at [GE,] [Nowakowski] noticed that his direct supervisor[,] Doug Czerwinski[,] started to make a noise with his lips like a horse exhaling through its lips (horse lips).  The noise seemed to be forced rather than a part of Doug's general demeanor.  Giving this idea credence[,] a foreman for a [GE] subcontractor, who worked closely with [Nowakowski], said on one occasion to [Nowakowski], "treat the horse like a thoroughbred and you will never hear the nag."  [Nowakowski] asked what he meant, but there wasn't anything else there.  He wasn't talking about some situation [Nowakowski] and he were in as workers.  Later[,] while working with E.E. Austin ..., Steve Morvey began to periodically make the horse lips noise[,] and again it didn't seem to be part of his normal cache of phrases. Further, in one instance during the spring of 2017, [Nowakowski] was approached on the street while walking his dogs, only to hear the same noise.  The icing on this cake[,] however[,] was the pieces of hay that were left on the center consol [sic] of [Nowakowski's] truck in the fall of 2016.  Also, a rusted horseshoe knickknack vanished from [Nowakowski's] bedroom in 2011, while working with Amthor....  [Nowakowski] believes that the seminal event, which lead [sic] to this horse[-]based metaphor, was a story Kim Carr[a]ra of Amthor ... told at a staff meeting regarding his horse.  Kim Carrara was mending a fence and his horse approached him and bit him on the arm.  Kim Carr[a]ra reacted by hitting the horse in the face with a hammer.  Aside from an animal abuse charge, this story stands as the beginning of a more nuanced form of threat.  This theme ties each of [Nowakowski's] employers together, except for CH2M ..., between 2011 and 2015. It also brings the Amthor ... obsession with "the Godfather" into focus.

Id. at 16-17.  Additionally, there is only one allegation pertaining to UPMC and Knox:

62. While searching for work after leaving E.E. Austin ..., [Nowakowski] included the phrase "from cradle to grave" in his cover letters as a reference to the project ownership mantra purported by [his] supervisor at the [GE] location in Erie, Pa. The mantra was included in [Nowakowski's] resume to offer a look at the level of responsibility [Nowakowski] carried while working for CH2M .... While working at the [GE] facility in Erie, Pa[,] [Nowakowski] did not see anything wrong with using the phrase to describe project ownership. On January 28, 2017[,] an advertisement was played on FM 107.1 around 3 p[.]m[.] for UPMC. The commercial featured a doctor discussing a medical program developed in the Temple University Hospital System, which offered a "cradle to grave" view of medical care in gunshot wound cases. The discussion came off particularly dark and disturbing, considering the inclusion of child victims. In other words, this doctor was making light of the sad fact that the hospital was watching these children from their "cradle to their grave," which was brought on by gun violence. This has particular meaning relative to the resume of [Nowakowski] because he was educated at Temple University. In a later advertisement for Knox ..., a local law firm in Erie, Pa, an attorney discussed a "cradle to grave" project management style in litigation. The attorney speaking also discussed employment litigation. Here, these advertisements were an attempt to make it clear to [Nowakowski] through mass media outlets that [his] information was being shared and distributed around the Erie region.

Id. at 34.

E.E. Austin, CH2M, and GE each filed Preliminary Objections. Amthor and Carrara Steel jointly filed Preliminary Objections, as did Knox and UPMC. Nowakowski filed an Answer as to each of these Preliminary Objections.

On August 25, 2017, Nowakowski filed an Amended Complaint, correcting the names of two of the Defendants. E.E. Austin, UPMC and Knox, CH2M, and Amthor and Carrara Steel filed Preliminary Objections to the Amended Complaint.

On September 11, 2017, Nowakowski filed a Petition for Injunctive Relief, requesting (1) relief from corrupt organizations, i.e., the Carrara "mob family," (2) injunctive relief in the amount of $40,000, for the purpose of moving away from the "social disease" of the Carrara family, and (3) relief from the continued stalking of Nowakowski's family. Additionally, Nowakowski stated that "the mouth of the snake must be removed from the prey that is Erie, PA[,] and all individuals associated with the referenced [C]omplaint must … be removed from participation with Erie, PA, and the Commonwealth[] of Pennsylvania." Petition for Injunctive Relief, 9/11/17, at 12 (unnumbered).

CH2M and GE each filed a Response in opposition to Nowakowski's Petition for Injunctive Relief.

By Order entered on December 7, 2017, the trial court, concluding that it lacked authority to grant the relief requested, dismissed Nowakowski's Petition for Injunctive Relief, with prejudice. Additionally, finding that Nowakowski's Complaint "fail[ed] to state any coherent facts which, even if taken as true, would support a cognizable legal action against any of the Defendants," the trial court sustained Defendants' Preliminary Objections, and dismissed Nowakowski's Complaint, with prejudice.

Nowakowski filed a timely Notice of Appeal. The trial court thereafter ordered Nowakowski to file a Pa.R.A.P. 1925(b) concise statement of matters

complained of on appeal.  Nowakowski timely complied.[2]

On appeal, Nowakowski presents the following issues for our review:

A. Did the trial court error [sic] by considering [Nowakowski's] [C]omplaint "lacking sufficient evidence, that if considered true, would constitute a valid claim[?]"

B. If a pro se party experiences intimidation, while drafting and filing a complaint, should that party be penalized for defects within the complaint?

C. Did the trial court error [sic] by not considering the presence of new matter as [P]reliminary [O]bjections were raised[?]

D. Can [Nowakowski] reasonably receive a fair and impartial determination in the Erie County Court of Common Pleas?  Along the same lines, can [Nowakowski] expect fairness from the Superior Court?

Brief for Appellant at 3-4.

Our standard of review for an order sustaining preliminary objections is well settled.

In determining whether the trial court properly sustained preliminary objections, the appellate court must examine the averments in the complaint, together with the documents and exhibits attached thereto, in order to evaluate the sufficiency of the facts averred.  The impetus of our inquiry is to determine the legal sufficiency of the complaint and whether the pleading would permit recovery if ultimately proven.  This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or abuse of discretion.  When

_____

[2] We note that, rather than clearly identifying purported trial court errors, Nowakowski's lengthy Concise Statement includes largely incoherent arguments concerning his disagreement with the trial court's dismissal of his Complaint and denial of injunctive relief.  Citing Pa.R.A.P. 1925(b)(4)(vi), Nowakowski states that because he "cannot identify for certain the basis for the [trial court's] decision[,]" the generality of his Concise Statement should not be a basis for finding waiver.

sustaining the trial court's ruling will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt.

Brosovic v. Nationwide Mut. Ins., 841 A.2d 1071, 1073 (Pa. Super. 2004) (citation omitted).

We will address Nowakowski's claims together. In his first claim, Nowakowski asserts that the trial court did not give appropriate weight to the facts he set forth in his Complaint. Brief for Appellant at 7. Nowakowski also argues that the defects in his Complaint should be overlooked due to the continuing intimidation by Defendants. Id. at 7, 8.

In his second claim, Nowakowski again asserts that any defects in the documents he submitted to the court are the result of the intimidation he experienced as the target of the conspiracy. Id. at 10-11.

In his third claim, Nowakowski asserts that "the conspiracy against [him] continues," and asks us to consider "several instances of evidence." Id. at 12. Specifically, Nowakowski claims that

[he] is being watched so closely, that after purchasing grape jam[] (importantly[, Nowakowski] typically purchases grape jelly, indicating that the conspirators look for changes in behavior in order to make their existence known, potentially by viewing purchase lists on Giant Eagle [c]omputer [s]ystems)[,] at a Giant Eagle grocery store[, a] packet of grape jam was left on the sidewalk before him as he walked his dog this past January. A worn down snow shovel blade that [Nowakowski] had placed in his recycling was also placed in the same location. Further, on March 2, 2018[, Nowakowski] received a Giant Eagle fuel members coupon book with his address, but his mother[']s name in the address block. Either, the conspirators created a new Giant Eagle [m]ember account with mashed up information[,] or they change[d] around the information in the existing accounts.

Similarly, advertisements on the radio from local architects and car dealers have been used to send conspiratorial intimidation across the air waves, through the use of the terms "parallel bars" as a mixed up reference to [Nowakowski's] gymnastics career under an engineering drafting reference and the use of the term "center city" by a car dealer, not in the downtown area of Erie, as a reference to the time [Nowakowski] lived in Philadelphia, which has labeled its downtown area Center City.

Id. at 12-13.

In his fourth claim, Nowakowski "questions whether [the] Erie County Court of Common Pleas or even the Superior Court can reasonably offer a fair and impartial determination in this matter." Id. at 14.

The only citations in Nowakowski's brief relate to the legal sufficiency of a pleading and this Court's standard for reviewing the grant of preliminary objections. Nowakowski's argument is otherwise devoid of relevant legal citations and adequate discussion of his claims. See Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). Although Nowakowski baldly asserts that he sufficiently pled causes of action for each of the claims raised in his Complaint, he has failed to set forth the elements of those causes of action, or to point to any contention supporting those elements. Further, Nowakowski has offered no explanation as to why he would be the target of an elaborate, ongoing conspiracy. Because Nowakowski failed to adequately develop any of his claims on appeal, his claims are waived. See Pa.R.A.P. 2119(a); see also Lackner v. Glosser, 892 A.2d 21, 29 (Pa. Super. 2006) (stating that

"arguments which are not appropriately developed are waived."); Bombar v. West Am. Ins. Co., 932 A.2d 78, 93 (Pa. Super. 2007) (stating that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant.").

Accordingly, we affirm the trial court's Order denying Nowakowsi's Petition for Injunctive Relief, granting Defendants' Preliminary Objections, and dismissing the Complaint.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  11/20/2018